## Sims *v.* National Box Co.

[91 South. 194. No. 22378.]

Master and Servant. *Saw carriage not a "railroad" within statutory fellow-servant rule.*

An employee of the owner of a sawmill plant, injured by the fault of a fellow servant, who receives such injury while engaged in the duty of loading logs on a saw carriage used in such plant and in keeping the tracks of such saw carriage cleaned off, which saw carriage is propelled by steam and lever power and is moved back and forth on wheels which run on tracks in the process of sawing logs into lumber, who sues his employer for such injury, does not come within the protection of chapter 194, Laws of 1908 (Hemingway's Code, section 6684, par. 1), the statute abolishing the fellow-servant rule as to injuries received by employees operating railroad, because such saw carriage is not a "railroad" within the meaning of said statute, but a piece of machinery which is a part of the sawmill plant proper.

Appeal from circuit court of Adams county.

Hon. R. L. Corban, Judge.

Suit by Jesse Sims against the National Box Company for damages for personal injuries. Verdict and judgment for plaintiff, and the defendant appeals. Affirmed.

*Chas F. Engle* and *Clayton D. Potter,* for appellant.

The sole question here is whether or not the appellant and his co-employees belong to that class of employees protected by the provisions of chapter 194, of the Laws of 1908, the first section of which is set out above, abolishing the fellow-servant rule as to certain classes of employees.

If the work the appellant was engaged in brought him under the protection of section 1, chapter 194, of the Laws of 1908, he would have been entitled to recover for the injuries he sustained if his evidence was believed by the jury. The court, however, instructed the jury, as the above quoted instruction shows, that if the appellant were injured by the negligence of one of his fellow-servants he could not recover. Therefore, if appellant comes under the provisions of section 1, chapter 194 of the Laws of 1908, and belonged to a class of servants protected by the provisions of that act, then the giving of the instruction to the effect that appellant could not recover if he was injured by the negligence of a fellow-servant was error, and it was also error if such was the case to refuse to grant instructions requested by the appellant to the effect that he was injured by the negligence of his fellow-servants in the employment he was then engaged in he could recover. Then, the question is whether or not the appellant was then and there using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks. In order to determine this question it is well to set out here a description of the apparatus then being used by the appellant.

The plant of the National Box Company at Natchez is built near the Mississippi River. The logs to be sawed are floated down the river to the plant, and running down to the river on an inclined plane is a track. On this track a truck or car is pulled up the incline from the river by a cable attached to the truck. On this car or truck running on the track on the incline and propelled by steam, the logs are hauled from the river up the incline and placed on what was known as the log deck. From there they were rolled down on what was called the carriage deck, and from the carriage deck they were placed on the carriage and carried to the saw. It was the appellant's job to roll the logs from what was called the carriage deck on to the carriage and to keep the track clean according to his evi-

dence. It was, therefore, on continuous operation from bringing logs from the river to the saw. In other words, when that part of the machinery was in motion, all was in motion.

It is our contention in the first place that the log carriage itself was a car, as is shown by the uncontradicted evidence, running on a track and propelled by steam, and that for that reason the appellant came under the protection of chapter 194 of the Laws of 1908. And secondly, that even if the court would not hold the carriage itself an instrumentality covered by the statute, that at any rate the car conveying the logs from the river up the inclined plane to the carriage deck was such an instrumentality covered by the statute, and that the hauling of the logs from the river and the sawing of same was one continuous operation. In other words, all the employees in and about the establishment, when it was going, were engaged, among other things, in moving the logs from the river to the saw. It will be noted that it was the specific duty of this servant to work on the carriage deck and on the carriage track. But the log in question was rolled directly from the log deck down on the running carriage, and the accident was caused by the negligence of the appellant's fellow-servant who was working on the log deck, that is the man whose duty it was to shock the logs when they were brought up on the little car from the river. In other words, it was the duty of the servant whose negligence caused the accident to unload the little car that ran up from the river hauling the logs up the incline.

In the case of *Newman Lumber Company* v. *Irving*, 118 Miss. 62, this court speaking through Judge Sykes held that a skidder, an arrangement worked with levers and cables, and upon which the log was attached to tongs, was a railroad within the meaning of the statute under consideration. *Hunter* v. *Ingram Day Lumber Co.*, 110 Miss. 745, 70 So. 901; *Railroad Co.* v. *Pontius*, 157 U. S. 209; 15 Sup. Ct. 585, 39 L. Ed. 675.

In the above-quoted opinion it will be noted that the skidder mentioned and declared to be a car under the facts in that case was an arrangement very much like the one here in question, except that the one here more nearly resembled an actual railroad.   In that case the skidder merely pulled logs in with tongs, but the arrangement in this case was a real car on a real track, a permanent track. The skidder arrangement was a mere device which could be moved from place to place.

The true test of the statute is that contained in the last paragraph of Judge SYKES' opinion, and that is to the effect that the statute was intended to protect all employees subject to the peculiar hazards incident to the operation of railroads.  This small railroad running up the incline was as much a railroad as any other railroad and the cars were propelled by steam and were used for transportation services.

The statute is as broad as language can make it intending to protect all sorts of railroad employees.  The statute protects every employee of a railroad corporation, and all other corporations and individuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline, or lever power, and running on tracks. The car in question was simply a cable car, nothing more, nothing less.  The employee in this case who caused the injury to the appellant had charge of shocking the logs right from this small railroad, and it was this servant's negligence that cause this injury.

In the case of *Ellis* v. *Bear Creek Mill Company*, 78 So. 706, 117 Miss. 742, our court speaking through Judge HOLDEN, held that a tonger, of a lumber mill company, who while loading logging cars on its logging railway, was injured by the negligence of a fellow servant, employed by the mill company in handling logs to the train from the woods, could recover for such injuries, since he was engaged in and about the operation of the logging railway when injured, and although the employment of the fellow-

servant may have been in another department of labor, still it was one of the duties incidental to the operation of the railroad.

According to the evidence of appellant in this case he was working with the servant of the appellee whose duty it was to shock the logs as they came to the log deck from the car that ran on the inclined plane from the river. This was a common enterprise and all were engaged about the same work. They were all working in and about this railroad on the inclined plane. This railroad had all the hazards incident to a commercial railroad, and it was the intention of the statute that servants engaged in and about the operation of cars of any sort should be protected by the statute.

*Reed, Brandon & Bowman,* for appellee.

The question presented on this appeal is whether or not appellant was under the allegations in the declaration or the proof in this case, entitled to the benefit of the protection afforded by section 6684, Hemingway's Code of Mississippi.

The declaration charges that appellant's employment was in and about the operation of a sawmill; that likewise all others whose acts contributed in whole or part, to the injuries received by appellant, were employed in and about this small sawmill, these allegations as to the employment of appellant and others are supported by the proof; that is to say, appellant was employed only about the sawmill; the sawyer was only employed in the operation of this sawmill; and the employee on the log platform likewise engaged in the operation of the sawmill he being charged with having rolled a log off of the platform onto the skidway, as was his duty to do, preparatory to getting the log onto the saw carriage, which work was a necessary part of the operation of the sawmill, just the same as that of appellant, who rolled them from the skidway to the saw carriage. So that it is perfectly manifest, that if ap-

pellant was or is entitled to the protection of the statute above quoted, it is because this carriage, a necessary and essential part of the machinery of the sawmill, is a car run upon a track and propelled by the dangerous agency of steam or lever power, and being such falls within the scope and meaning of the above section.  In other words under the allegations in the declaration, this court is called upon by this appeal to hold that a saw carriage, a necessary and essential part of the machinery of every small sawmill, without which it could not be operated and run, is a car upon a track propelled by the powerful and dangerous agency of steam or lever power.  We respectfully submit that to argue this proposition is akin to arguing that an elephant is not a rhinocerous; "it just ain't."  Being an essential and necessary part of the machinery of a sawmill, it is embraced in the general term, sawmill; it is not equipped with any steam propelling power or any other such power as is mentioned in the statute; it is pulled by a cable, and has no separate use other than as a part of the necessary and essential machinery and equipment of a sawmill.  In no sense of the word, is that carriage a car; it is peculiarly equipped with sawblocks, tongs to hold the log in place thereon, a lever to regulate the manner of cutting the log into lumber, insomuch so that by virtue of its very equipment and construction it cannot be defined other than, a necessary part of the machinery and equipment of a sawmill, commonly called a saw carriage. The term sawmill includes all the machinery and fixtures necessary to make it a sawmill in all its parts.  While it is true that the term "car" may have a variety of meanings, yet we submit that as used in the statute due regard must be had to the other words with which it is associated, and the subject-matter in relation to which it is used, and when this is done, we respectfully submit that as related to the subject-matter of said statute, the term "car" as used therein can in no acceptable sense or meaning be held to apply and define an essential and necessary part of the machinery or equipment of a saw-mill.  The particular car-

riage herein sought to be included within the fair meaning of car as used in the statute, has no other use than as an essential and necessary part of the equipment and machinery of a sawmill; being then an essential and necessary part of a sawmill, to hold that it also may be defined to be a car, is tantamount to holding that the term "car" may be defined to be, a necessary and essential part of the machinery and equipment of a sawmill, which is contrary to reason and common knowledge. We therefore, submit that under the allegations and proof in this case, appellant was not engaged in such employment as brought him within the protection of said section 6684.

But it is further argued by appellant, that appellee had another car and another track used and operated by it in bringing logs from the river bank up to the log-deck, where they are unloaded and placed on a platform to be sawed into lumber by the sawmill and that the car propelled on this track was propelled by the dangerous agency of steam, and that appellant being engaged in sawing the logs or helping to operate the sawmill that sawed these logs so placed on the platform by means of this truck and track, into lumber, was, therefore, entitled to the benefit and protection of said section 6684. We respectfully submit that there was no allegation or proof that appellant was engaged in the operation of this truck on this track, and that furthermore, that this truck was not such car as brought or would bring appellant, within the protection of said statute.

We submit therefore, that the instructions asked by the appellant and refused by the lower court, were properly refused. We submit that upon this record and under the facts in this case, unless the court should hold that by virtue of his employment appellant was entitled to the protection of section 6684, the verdict in this case rendered by the jury is the only correct verdict that could have been rendered by them. Appellee was not shown to have been guilty of any negligence whatever; it was paying appellant good wages to properly perform his duties; had he

blocked the skidway, as his duty required him to do, the accident would never have happened; had the employee on the log platform not rolled the log down, it would not have happened; but we cannot say that had the sawyer not moved the saw carriage to catch the log, that plaintiff or appellant would not have been injured; on the contrary the whole log might have fallen on him. In any light in which the facts may be viewed however, there is not any evidence that appellee was guilty of any negligence whatever. The instructions given to both parties fairly stated the law, and the only verdict that could have been returned was returned by the jury, unless this court holds that appellant was entitled to the benefit and protection of section 6684, by virtue of his employment; and this holding we respectfully submit is not warranted by the facts in this case.

It is therefore submitted that this cause should be by this court affirmed.

ANDERSON, J., delivered the opinion of the court.

Appellant, Jesse Sims, sued appellee, National Box Company, for damages for a personal injury received by him. There was a verdict and judgment for appellee, from which appellant prosecutes this appeal.

When the injury occurred the appellant was engaged in his duties as an employee of appellee in its sawmill plant located near the river at Natchez, and received the injury through the fault of a fellow-servant. The only question in the case is whether appellant at the time of his injury came within the protection of the statute abolishing the fellow-servant rule .(chapter 194, Laws of 1908, section 6684, par. 1, Hemingway's Code), as to injuries received by employees in operating railroads. Paragraph 1, section 6684, Hemingway's Code, is in this language:

"Every employee of a railroad corporation, and all other corporation and individuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by

the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, shall have the same rights and remedies for an injury suffered by him from the act or omission of such railroad corporation or others, or their employees, as are allowed by law to other persons not employed."

The saw logs for appellee's mill were drawn up from the river to the mill, a distance of something like one hundred yards, by means of a car, or truck with wheels, which ran on tracks and was propelled by steam. After thus being conveyed from the river to the mill plant, the logs were unloaded from this truck, or car, onto the log deck; from thence they were transferred to the carriage deck, and from the carriage deck they were transferred as needed for the purpose of being sawed to the saw carriage, to which they were attached, and in that position sawed into lumber.

Appellant shows by his own testimony that he had no duties whatever to perform with reference to transferring the logs from the river to the mill plant. Taking the testimony most strongly in favor of appellant, it shows that his duties consisted alone in transferring the logs from the carriage deck to the saw carriage and in keeping the trucks of the saw carriage cleaned off, and that he received the injury complained of while so engaged. So the question is whether a saw carriage is a railroad within the meaning of this statute. The evidence shows that a saw carriage is simply a piece of machinery in a sawmill. It is a part of the sawmill plant. It is true that a saw carriage has wheels and is propelled by steam and lever power, but that is not determinative of the question. Appellant relies on *Hunter* v. *Ingram-Day Lumber Co.,* 110 Miss. 744, 70 So. 901, and *Newman Lumber Co.* v. *Irving,* 118 Miss. 59, 79 So. 2. The railroad involved in each of those cases was a regular logging railroad, which ran out into the forest, with cars and engines propelled by steam, and used for the purpose of hauling logs. In the case of *Newman Lumber Co.* v. *Irving, supra,* the court said that

the statute in question was intended to protect employees subjected to the peculiar hazards incident to the operation of railroads.   Here we have, not a railroad, but a sawmill, and the injury complained of occurring, not in the operation of a railroad, but in the operation of a saw carriage, a necessary piece of machinery used in sawing logs.   We are of opinion that appellant did not come within the protection of the statute referred to.

*Affirmed.*